JAMES H. CARTER *vs.* KEZIA CROSS, ADM'X OF ELLEN CROSS.—*December* 1848.

An action was instituted in March 1845, upon receipts dated in 1838, for money to be paid to certain creditors of the administratrix of the plaintiff, and in case of their refusal to receive the fund, it was to be repaid to the intestate. In 1838, all the creditors were paid, except one, who refused to receive his proportion of the fund. The defendant, *within three years,* said, that he had, shortly after the refusal of the unpaid creditor to receive his proportion of the money, loaned the amount offered to him, and lost it;

that his motive in making the loan, was to get rid of the money, and he never would pay it, unless the law compelled him. HELD, that these declarations were admissions, that the money had never been returned by the defendant; acknowledgments of a present subsisting debt due by him, and furnished no moral or legal excuse, why he should not pay the debt. The defendant's duty was to return the money, not risk it by a loan.

Under the circumstances of this case, the question of interest was for the jury, and the court refused to instruct them, that it could not be recovered anterior to the date of the writ.

APPEAL from *Baltimore* county court.

This was an action of *assumpsit*, brought on the 18th March 1845, by the appellee against the appellant. The defendant below pleaded the general issue and the act of limitations.

The plaintiff to maintain the issues on her part, offered in evidence two instruments of writing, admitted to have been signed by the defendant, the first of which is as follows:

"BALTIMORE, *March* 22nd, 1838.

Received of *Ellen Cross*, through the hands of *Daniel Hamer*, two hundred dollars, to be applied to the payment of *J. A. Cross'* debts, in the city of *Baltimore*, at the rate of thirty-three cents in the dollar, on the signing of a final release; in case of their refusal, the money to be returned to said *Ellen Cross*, so far as the same shall not be accepted by said creditors.                Signed,        J. H. CARTER."

The second is in the following words:

"BALTIMORE, *April the 2nd*, 1838.

Received of *Ellen Cross*, through the hands of *Daniel Hamer*, three hundred dollars, to be appropriated as the former receipt of two hundred dollars.

Signed,        J. H. CARTER."

The certificate of the letters of administration on the estate of *Ellen Cross*, were admitted in evidence, by consent of counsel.

The plaintiff then gave in evidence by *John Hurst*, "that he was a member of the firm of *Barry and Hurst* in the spring of 1838, and that said firm were creditors of *J. A. Cross*, named in said receipts, to an amount between $900 and $1000. And further proved by said *Hurst*, that in the spring of 1838, the defendant called on said firm, and stated, that he had funds to

settle a dividend of thirty-three cents in the dollar, upon the claims against the said *J. A. Cross*, and offered to pay said firm, at that rate, upon their claim, provided they would execute a final release to said *J. A. Cross*, which the said *Hurst* and his partner refused to do. That the said *Carter* subsequently, at various times, shortly before and since this suit was brought, stated to the said *Hurst*, that he had, shortly after the refusal of *Barry and Hurst*, as aforesaid, loaned the amount of money, so as aforesaid offered to them, to a certain *Raymond*, upon his bond, secured by one *Anchor*, or to *Anchor*, on his bond, secured by *Raymond;* that his motive for making said loan was, that he wanted to get rid of the money, as he did not know what else to do with it, and he thought he was doing a favor to *Ellen Cross*, by loaning it out in that manner, as the security was then good. That he had taken the bond of said *Raymond* or *Anchor*, but the same had been mislaid by him, and *Anchor* had, shortly after such loan, died insolvent, and *Raymond* had gone away and proved worthless.

That in these conversations the said *Carter* never said, he had paid said sum of money to said *Ellen Cross*, or her administrator, but always said, he, the defendant, had not the money; he had loaned it away, and never would pay it, unless the law compelled him; and he said in said conversations, that he thought the money placed in his hands, was the money of said *J. A. Cross*, and was of that opinion, until he was afterwards shewn his, *Carter's*, receipts. And the plaintiff admitting, that said *Carter* had paid all the other creditors of the said *J. A. Cross*, their several proportions of the money placed in his hands, rested his case.

The defendant offered to the court the following prayers :

"1st. That upon the whole evidence, if believed by the jury, the plaintiff is not entitled to recover, because his cause of action was of more than three years' standing, before the impetration of the original writ in this cause, and because there is no evidence to remove the bar of the statute of limitations."

2ND. If the jury find from the evidence, that the money sued for was advanced by *Ellen Cross* to the defendant, for the purposes stated in the two receipts named in the evidence; and if

the jury further find, that the said *Carter* paid and satisfied all other creditors of *J. A. Cross*, meant to be provided for in said receipt, except *Barry and Hurst*, and that the said *Barry and Hurst*, in the spring of 1838, and after the said receipts, refused to accept their proportions of the money so advanced to the dëfendant, then there is no evidence in this cause, which can take the plaintiff's cause of action out of the statute of limitations, and the defendant is entitled to a verdict.''

3RD. That the plaintiff is not entitled to recover interest on her claim, for any portion of time anterior to the date of the writ in this cause, because there is no evidence of any prior demand.''

All of which prayers the court, (LE GRAND, A. J.,) refused. The defendant below appealed to this court.

The cause was argued before SPENCE, MARTIN and FRICK, J.

By BRENT for the appellant, and
By J. M. BUCHANAN for the appellee.

SPENCE, J., delivered the opinion of this court.

This was an action of *assumpsit*, in *Baltimore* county court. The defendant pleaded *non assumpsit*. *Non assumpsit*, *infra-tres annos*, and *actio non*. On these pleas issues were joined.

[The judge, adverting to the evidence and prayers as before stated, proceeded to say:]

We have presented the prayers of the defendant at length, to shew that the error, or defect in the declaration, namely, that it contained no count on the promise to the administratrix, (a point or question which was relied on in the argument,) does not appear by the record, to have been raised or made in the county court, and upon which that court rendered judgment, and, of course, it cannot, under the provisions of the act of 1825, ch. 117, be permitted to be urged or insisted upon in the trial of this appeal.

The question which the two first prayers raises, is the force and effect of the evidence, to remove the bar of the statute of limitations.

The execution of the two receipts, of March the 22nd, and April the 2nd, 1838, is admitted. The witness, on whose evidence the plaintiff below relied, to remove the bar of the statute of limitations, was *John Hurst*.

The receipts admitted in evidence, prove the receipt by *Carter* of the money, the object for which it was received, and *Carter's* promise to return it to *Ellen Cross*, in the event of the creditor or creditors of *J. A. Cross*, refusing to receive the composition of thirty-three cents in the dollar, and execute a release to *J. A. Cross*. *Hurst's* evidence proves the refusal of *Barry and Hurst*, to receive the composition and execute the release. The facts thus far referred to, occurred more than three years before the institution of this suit. But *Hurst*, in his evidence, further states, that *Carter* subsequently, at various times, shortly before and since this suit was brought, stated to said *Hurst*, that he had, shortly after the refusal of *Barry and Hurst*, loaned the amount of money offered to them, to a certain *Raymond* or *Anchor;* that his motive for making said loan was, that he wanted to get rid of the money.

That in these conversations *Carter* never stated, that he had paid said sum of money to *Ellen Cross*, or her administratrix, but always said, he had not the money, he had loaned it away, and never would pay it, unless the law compelled him. This is a full admission on the part of *Carter*, that the sum of money which he offered *Barry and Hurst*, as a composition of their debt due from *J. A. Cross*, and which they refused to accept, was never returned or paid to *Ellen Cross*. *Carter*, in all the conversations detailed by *Hurst*, never said, he had paid the said sum of money to *Ellen Cross*, but always said, "he had not the money, he had loaned it away, and never would pay it, unless compelled by law." If the question rested upon these admissions of *Carter*, without any qualifications, could there remain a doubt, but that they were an acknowledgment of a present subsisting debt, from which the law would raise an implied promise, by which the bar of the statute would be removed? What excuse did *Carter* offer for not paying this money? that he wanted to get rid of the money, as he did not know what else to do with it, and he thought it was doing

a favor to *Ellen Cross*, by loaning it out in that manner, as the security was then good; that he had taken the bond of *Raymond* and *Anchor*, but the same had been mislaid by him; *Anchor* had, shortly after such loan, died insolvent, and *Raymond* had gone away and proved worthless. The excuse offered for not paying the money, is a clear and unequivocal admission, that it never had been paid to *Ellen Cross*, but that he wanted to get rid of the money, which, in his receipt, he promised, under a certain contingency, to return to *Ellen Cross*, after that contingency did happen; he thought he was doing her a favor, instead of returning or paying her the money, to loan it out on securities, which very soon proved worthless.

Does the excuse set up by *Carter*, if taken as true, furnish a legal or moral excuse, why he should not pay the money? It was unquestionably his moral duty, when the money was refused by *Barry and Hurst*, to have performed his promise and discharged his legal obligation, by returning the money to *Ellen Cross*, as he contracted to do when he received it, and not to have loaned it out on securities, which very soon after proved worthless, without the knowledge or consent of *Ellen Cross*.

The acknowledgment of *Carter*, in the language of this court, in *Keplinger vs. Griffith*, 2 *G. & J.*, 301, "was a clearly implied admission, that the debt remained due and unpaid, and the excuse alleged for not paying it, furnished no real objection to the payment of it, if true."

The court committed no error in rejecting the defendant's third prayer, on the authority of *Newson's Administrators, vs. Douglas*, 7 *Har. & J.*, 453, and *Fridge vs. The State, use of Kirk*, 3 *G. & J.*, 103, the question of interest was properly left to the jury.

JUDGMENT AFFIRMED.